**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:19-CV-00002-LLK**

**JAMES E. VANCE, on behalf of MELANIE S. VANCE, deceased**          **PLAINTIFF**

**v.**

**ANDREW SAUL, Commissioner of Social Security**          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits.  The fact and law summaries of Plaintiff and Defendant are at Dockets # 13 and 18.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.  (Docket # 9.)

Effective June 1, 2013, the Social Security Administration determined that Plaintiff's disability ended due to medical improvement and ceased payment of Disability Insurance Benefits pursuant to Title II of the Social Security Act.  The Administrative Law Judge (ALJ) affirmed the Administration's cessation determination but found that, effective February 24, 2016, Plaintiff's impairments worsened such that she again became disabled and was, therefore, eligible for a new period of Title II benefits. (Administrative Record (AR) at 48.)  In other words, the ALJ found that Plaintiff was **not** disabled during the closed period between June 1, 2013 and February 24, 2016.

The ALJ's finding of a re-onset of disability date of February 24, 2016 (but not earlier) did not comport with applicable legal standards.  The ALJ's selection of February 24, 2016 was unsupported by any (and, in fact, contradicted every) medical opinion, which indicated that there was no period of non-disability following Plaintiff's liver transplant in June 2010.  The ALJ based his selection on his own independent (lay) assessment of the medical evidence, which he was unqualified to give.  Therefore, the

Court will REMAND this matter to the Commissioner for calculation and payment of past-due Title II benefits for the closed period between June 1, 2013 and February 24, 2016.

**Background facts and procedural history**

In March 2010, the Social Security Administration found that Plaintiff was disabled as of April 2009, due to chronic liver disease satisfying Listing 5.05B. (AR at 128.)

In June 2010, Plaintiff underwent liver transplant surgery. (AR at 36.) Physical therapy notes state that she was bedridden for two years after the transplant. (AR at 67, 1440.)

Disabled individuals are subject to periodic reviews to determine if they continue to be disabled and entitled to benefits. 20 C.F.R. § 404.1594(a). As part of the continuing-disability review process, in May 2013, the Administration's non-examining program physician, P. Saranga, assessed Plaintiff as capable of performing a limited range of light work. (AR at 631-37.) In June 2013, the Administration found that Plaintiff was no longer disabled as of June 2013, due to medical improvement. The Administration reaffirmed its decision upon reconsideration, and Plaintiff sought review by an ALJ.

As described in greater detail below, the medical opinions in the administrative record were unanimous that that the medication Plaintiff was required to take to prevent rejection of her transplanted liver caused serious side effects such as nausea, vomiting, weakness, severe fatigue, loss of stamina (with history of falls), and loss of concentration. Those medical opinions were from Plaintiff's treating physician, Jason Campbell, M.D. (AR at 1483-86, 3270-73); Dr. Christopher Jones, Director of Liver Transplant Program (AR at 2920); and the medical advisor the ALJ called to testify at the administrative hearing, Samuel Berman, M.D. (AR at 71-72). In addition, after her transplant, Plaintiff experienced episodes of hyponatremia (low level of sodium in the blood), which were severe enough to require hospitalization on two occasions. (AR at 951, 2920, 3271.) According to Dr. Jones, "[a]long with this [hyponatremia] issue come confusion, weakness and dizziness." (*Id.*)

In December 2014, Plaintiff was experiencing symptoms of hyponatremia, and a biopsy revealed liver steatosis (abnormal retention of lipids). (AR at 3271.) Plaintiff was hospitalized for several days to rule out the possibility of organ rejection. (*Id.*)

In February 2016, Plaintiff was again hospitalized for several days due to recurrence of hyponatremia symptoms. (AR at 951.)

In December 2016, Plaintiff was diagnosed with colon/anal cancer. (AR at 70.)

In September 2016, at Plaintiff's request, Dr. Campbell completed the physical assessment form. (AR at 1484.)

In May 2017, Dr. Christopher wrote a letter in support of Plaintiff's disability claim. (AR at 2920.) Dr. Christopher stated that Plaintiff has had a "very rocky course since her transplant" and that the "side effects of these medications to prevent rejection are weakness, nausea, loss of stamina, loss of concentration and severe fatigue." (*Id.*) Dr. Christopher opined that Plaintiff is "not able to work at this time and from her past history she probably will never be able to hold down a job without multiples absences." (*Id.*)

In June 2017, the ALJ held an administrative hearing at which Dr. Berman testified as a medical advisor. (AR at 65-72.)

In July 2017, Dr. Campbell gave a statement to the effect that the limitations he assessed in September 2016 apply at least as far back as June 2013, when the Administration terminated benefits. (AR at 3271.)

In January 2018, the ALJ issued a decision, affirming the Administration's cessation determination as of June 2013 due to medical improvement. (AR at 36, 46.) Additionally, the ALJ found that Plaintiff's chronic liver disease (post-transplant) worsened after June 2013 to the point that she again became unable to work and disabled as of February 2016. (AR at 48.)

In November 2018, the Appeals Council declined to disturb the ALJ's decision, making the ALJ's decision the Commissioner's final decision subject to this judicial review. (AR at 1-4.)

In January 2019, Plaintiff filed her complaint seeking judicial review. (Docket # 1.)

In March 2019, Plaintiff died of colon/anal cancer and cirrhosis of the liver. (Death Certificate, Docket # 17-1.)

**Summary of the ALJ's decision that Plaintiff's disability ended in June 2013**

The ALJ found that Plaintiff's disability ended beginning on June 1, 2013. The ALJ made this finding pursuant to the eight-step sequential evaluation process that applies in cases of termination of benefits. The evaluation process is codified at 20 C.F.R. § 404.1594(f)(1-8).

First, the ALJ found that, from before June 1, 2013, the date Plaintiff's disability ended, on up to the present, Plaintiff has not engaged in any substantial gainful activity. (AR at 34.) Plaintiff concedes this finding is supported by substantial evidence. (Docket # 13 at 2.)

Second, the ALJ found that, since June 1, 2013, Plaintiff did not have an impairment satisfying the Listing. (AR at 34.) Plaintiff notes that Dr. Berman testified that her colon/anal cancer equaled Listing 13.18(B) ("squamous cell carcinoma of the anus, recurrent after surgery") and that her chronic liver disease equaled one of the Listings at 5.05(A-G) but admits that the testimony lacked sufficient specificity to be entitled to case-dispositive weight. (Docket # 13 at 2 referencing testimony at AR 69-70.)

Third, the ALJ found that medical improvement occurred as of June 1, 2013 (after the prior finding of disability, or comparison point decision, CPD) because Plaintiff's chronic liver disease no longer satisfies Listing 5.05B. (AR at 36.) Plaintiff does not challenge this finding.

Fourth, the ALJ found that there is a presumption that the medical improvement is related to the ability to work because Plaintiff no longer satisfies the Listing. (AR at 36.) Plaintiff does not challenge this finding.

Step 5 applies only if "we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work." 20 C.F.R. § 404.1594(f)(5). Step 5 is inapplicable in this case.

Sixth, the ALJ found that, as of June 1, 2013, Plaintiff continues to have severe, or vocationally significant, impairments. (AR at 34.) Those impairments are chronic liver disease with liver transplantation, remote history of gastric bypass surgery, alcohol dependence and substance abuse, a mood disorder, anxiety and OCD [obsessive-compulsive disorder]. (AR at 37.) Plaintiff concedes that this finding is supported by substantial evidence. (Docket # 13 at 2, 3.)

As in any case that advances beyond Step 6, the ALJ was required to determine Plaintiff's "residual functional capacity [RFC] based on all your current impairments," i.e., Plaintiff's impairments during the closed period between June 1, 2013 and February 24, 2016. Section 404.1594(f)(7). The ALJ found that, during that period, physically, Plaintiff had an RFC to perform a limited range of light work. (AR at 37.) Mentally, Plaintiff had an RFC to understand and follow routine tasks involving 1 to 4 steps; sustain adequate concentration, persistence or pace for such tasks for two hours at a time; frequent contact with coworkers and supervisors and only occasional contact with the general public; and no more than occasional changes in the work routine or environment. (*Id.*) Plaintiff argues that both the physical and mental components of the ALJ's RFC findings are not supported by substantial evidence. (Docket # 13 at 3-7.)

Seventh, the ALJ found that, as of June 1, 2013, Plaintiff was unable to perform past relevant work. (AR at 45.) Except for the ALJ's allegedly unsupported RFC determination, Plaintiff does not challenge this finding.

Eighth, the ALJ found that Plaintiff's disability ended as of June 1, 2013, because she was able to perform a significant number of unskilled, light jobs in the national economy such as general office helper,

inspector, and hand packer. (AR 46-47.) Except for the ALJ's allegedly unsupported RFC determination, Plaintiff does not challenge this finding.

**Summary of the ALJ's decision that Plaintiff
became eligible for a new period of disability in February 2016 (but not earlier)**

As noted above, the ALJ found that Plaintiff's disability ended on June 1, 2013, due to medical improvement. If an ALJ finds that a claimant's disability ended, the ALJ is required to consider the possibility that the disability subsequently resumed during the period between the cessation date and the decision date. Stated more technically, the ALJ must determine whether the "initial medical cessation determination was correct" and, if so, whether the claimant "has again become disabled at any time through the date of his or her determination or decision because of a worsening of an existing impairment or the onset of a new impairment," thereby making the claimant eligible for a "new period of disability." Social Security Ruling (SSR) 13-3p, 2013 WL 785484, at *5.

Plaintiff was ensured for Title II benefits through September 2018. (AR at 255.) In his January 2018 decision, the ALJ found that, as of February 24, 2016, Plaintiff's impairments worsened such that she again became disabled and was, therefore, eligible for a new period of disability. (AR at 48.) In support of this finding, the ALJ found that, beginning on February 24, 2016, Plaintiff had the same physical and mental limitations she had during the closed period of non-disability between June 1, 2013 and February 24, 2016, except that "[i]n addition, as of February 24, 2016, [Plaintiff] will need two to three unscheduled breaks during the day and would miss 3 to 4 days of work monthly." (AR at 45.) The vocational expert (VE) testified that this level of absenteeism from the job and the job site would be intolerable to most employers and would render Plaintiff disabled. (AR at 91.)

In other words, the ALJ found that, beginning on February 24, 2016, Plaintiff was disabled because she was no longer able to regularly attend any job or job site. Plaintiff states that she "agrees that [she was disabling on February 24, 2016] but disagrees with the start date of the limitations." (Docket # 13 at

8.)  According to Plaintiff, the ALJ should have found that her disability began "[a]t the very least, … a reasonable period before hospitalization on February 23, 2016." (*Id.*)

**The ALJ's determination of the date of re-onset of Plaintiff's disability (February 24, 2016) was unsupported by any medical opinion.**

Every medical opinion in the administrative record indicates that Plaintiff was unable to attend work regularly or perform even low stress tasks after her June 2010 liver transplant (with no in-between period of non-disability).  This was due to the side-effects of medication Plaintiff took to prevent rejection of her transplanted liver.

Jason Campbell, M.D., began treating Plaintiff in 2006.  (AR at 3270.)  In September 2016, Dr. Campbell completed the standard physical assessment form.  (AR at 1483-86.)  Among other things, Dr. Campbell found that Plaintiff would require daily, 30-minute unscheduled breaks during a workday (due to muscle weakness, chronic fatigue, and adverse side-effects of medication) and would be off task 25% or more of the workday (due to symptoms interfering with attention and concentration needed to perform even simple work tasks).  (AR at 1484, 1486.)  In July 2017, Dr. Campbell indicated that these limitations applied at least as far back as June 2013, when the Administration found that Plaintiff's disability ceased.  (AR at 3271.)  According to Dr. Campbell, Plaintiff "has been very poorly functional since her liver transplant [in June 2010].  Mentally much slower.  Physically much more frail."  (AR at 3272.)  The ALJ rejected Dr. Campbell's disabling opinions for the period between June 2013 and February 2016.  (AR at 41-43.)

In May 2017, Dr. Christopher Jones, Director of Liver Transplant Program, stated that the "side effects of these medications to prevent rejection are weakness, nausea, loss of stamina, loss of concentration and severe fatigue."  (AR at 2920.)  Dr. Christopher opined that Plaintiff is "not able to work at this time and from her past history she probably will never be able to hold down a job without multiples absences."  (*Id.*)  The ALJ gave "little weight" to Dr. Christopher's statement regarding the side-effects of

medication and rejected Dr. Christopher's opinion regarding Plaintiff's ability to hold down a job because

that issue was "reserved for me [the ALJ] as an agent for the Commissioner."  (AR at 40.)

Samuel Berman, M.D., testified as a medical expert at the administrative hearing.  Dr. Berman

testified that, after her liver transplant in June 2010, Plaintiff experienced recurrent anemia, neutropenia

(low blood count of a certain type of white blood cell), and electrolyte disturbances.  (AR at 70.)  In

December 2016, a perianal lesion was excised, and Plaintiff was diagnosed with anal squamous cell

carcinoma, invasive, moderate to poorly differentiating.  (AR at 67.)  Plaintiff began chemotherapy in

January 2017.  (AR at 68.)  After June 2010, in Dr. Berman's opinion, Plaintiff's impairments as a whole

met or equaled the clinical criteria of Listing 13.18(B) ("squamous cell carcinoma of the anus, recurrent

after surgery") and/or "a listing for chronic liver disease" (i.e., Listing 5.05(A-G)).  (AR at 69-70.)

Additionally (or alternatively), after June 2010, the medication Plaintiff took to prevent rejection of the

transplant caused disabling side effects such as nausea, vomiting, weakness, fatigue, loss of stamina (with

history of falls), loss of concentration.  (AR at 71-72.)  The ALJ rejected Dr. Berman's disabling opinions for

the period between June 2013 and February 2016.  (AR at 35, 40, 43.)

Non-examining program physician P. Saranga assessed Plaintiff as capable of performing light

work in May 2013.  (AR at 631-37.)  The ALJ gave "greater weight" to Dr. Saranga's opinion.  (AR at 43.)

However, Dr. Saranga was not in a position (in 2013) to predict a subsequent date of re-onset of disability.

**The ALJ's determination of the date of re-onset of Plaintiff's disability (February 24, 2016)
did not comport with applicable legal standards set forth in SSR 83-20.**

As noted above, SSR 13-3p required the ALJ to determine whether the "initial medical cessation

determination was correct" and, if so, whether Plaintiff "has again become disabled at any time through

the date of his or her determination or decision because of a worsening of an existing impairment or the

onset of a new impairment," thereby making Plaintiff eligible for a "new period of disability."  2013 WL

785484, at *5.  Prior to adoption of SSR 13-3p in 2013, if an ALJ found that the Administration's medical

cessation date was appropriate, but evidence showed that the claimant had again become disabled, the

ALJ "would solicit a new application for title II disability benefits." *Id.* at *3. SSR 13-3p eliminated the "need for filing a new application for reentitlement." *Id.* at *4. Therefore, reentitlement cases (such as the present one) are effectively new applications for Title II benefits. Because the ALJ made a finding of disability for a new period of disability, the ALJ was required to determine when Plaintiff's disability began, and that determination must be supported by substantial evidence. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("Once a finding of disability is made, the ALJ must determine the date of onset.").

The applicable legal standards for determining the onset of disability date are set forth in Social Security Ruling (SSR) 83-20, 1983 WL 31249. It is essential that the onset date be correct because, in Title II claims, it affects the amount of the benefit. *Id.* at *1. Factors relevant to the determination of disability onset include the claimant's allegations, the work history, and the medical evidence. *Id.* With slowly progressive impairments, the evidence in the administrative record is often insufficient to establish the precise date when a claimant's impairments became disabling, and the onset date must be inferred. *Id.* at *2. Because the inference must have a legitimate medical basis, where there is no such basis, at the hearing, the ALJ should call on the services of a medical advisor. *Id.* In particular, the ALJ should call on a medical advisor when (as here) it is necessary to determine when a malignancy (i.e., Plaintiff's colon/anal cancer) becomes inoperable or beyond control by other modes of therapy. *Id.* at *4.

As noted above, the medical advisor, Dr. Berman, testified that Plaintiff's impairments equaled the Listings for cancer and/or chronic liver disease and that she suffered from disabling side-effects of medication for the entire period after her liver transplant in June 2010; and the ALJ rejected that testimony. (AR at 35, 40, 43, 69-72.) Because the ALJ "received and **rejected** *(emphasis added)* testimony from a medical advisor [which the ALJ needed due to an insufficient medical basis for inferring the onset date], [the ALJ] did not use that medical advisor's testimony to help him determine plaintiff's disability onset date or to clarify the ambiguous record regarding plaintiff's disability onset date, thus violating the

spirit and underlying purpose of SSR 83-20." *Cataneo v. Comm'r*, No. 11-CV-2671 (KAM), 2013 WL

1122626, at *18 (E.D. N.Y. Mar. 17, 2013).  As in *Cataneo*, the ALJ's medical expertise did not increase

(such that he no longer needed any medical advice on the onset date) simply because he rejected the

medical advisor's opinion on the matter.

**The ALJ's determination of the date of re-onset of disability (February 24, 2016)**
**was based on an improper independent (lay) assessment of the medical evidence.**

Having rejected every medical opinion regarding the date of re-onset of disability, the ALJ gave an

independent (lay) assessment of the medical evidence in support of his selected date of February 24,

2016:

> In August 2016, another specialist saw the clamant about the recurrent hyponatremia [low level
> of sodium in the blood].  The specialist noted that the earlier episodes of hyponatremia had been
> asymptomatic with symptoms reported to have started three months ago.  If the hyponatremia
> was initially asymptomatic, therefore it would be a nonsevere impairment since there were no
> symptoms to restrict or interfere with basic work activities … prior to the later establish onset
> date.
> …
> Dr. Berman testified that the anemia and electrolyte disturbance [hyponatremia] could be due to
> alcohol abuse.  … Although sodium levels have not dropped as low as during the February 2016
> hospitalization, the levels have remained low through the latter half of 2016 and into 2017….
> Although the improvement in the hyponatremia could be attributed to the claimant's recent
> sobriety, it could also equally be related to the nephrologist's instruction on fluid restriction ….
> Since other causes may have resulted in the low hyponatremia levels, I am unable to exclude that
> the symptoms of dizziness and weakness beginning in February 2016 were definitely related to
> the claimant's alcohol abuse.

(AR at 41, 47-48.)

"ALJs must not succumb to the temptation to play doctor and make their own independent

medical findings."  *Simpson v. Comm'r*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Comm'r*,

98 F.3d 966, 970 (7th Cir. 1996)).  "As a lay person, ... the ALJ was simply not qualified to interpret raw

medical data in functional terms."  *Rudd v. Comm'r*, 531 F. App'x 719, 726 (6th Cir. 2013) (quoting *Nguyen*

*v. Comm'r*, 172 F.3d 31, 35 (1st Cir. 1999)).  An ALJ "may not substitute his own medical judgment for that

of the treating physician where the opinion of the treating physician is supported by the medical

evidence."  *Meece v. Comm'r*, 192 F. App'x 456, 465 (6th Cir. 2006).

To the extent the ALJ's assessment of the medical evidence was based on Plaintiff's alcohol use, it was contrary to the opinions of Drs. Berman and Campbell. Dr. Berman testified that "the original need for … the medication would be the transplant which was caused by … the alcohol." (AR at 71.) "But … even if she had dropped drinking and was sober, she could still have the side effects from medication causing the weakness, nausea, vomiting and so on." (*Id.*) Dr. Campbell expressed skepticism that Plaintiff had any significant alcohol use after her liver transplant but, even if she did, she likely would have still experienced symptoms such as weakness, nausea, and vomiting. (AR at 3272.)

To the extent the ALJ's assessment was based on Plaintiff's hyponatremia, it was improper. The ALJ gave great significance to Dr. Berman's suggestion that Plaintiff's hyponatremia and associated symptoms of confusion, weakness, and dizziness "could be due to alcohol abuse." (AR at 47.) There was some indication that the hyponatremia might be due to psychogenic polydipsia (excessive water consumption due to psychiatric compulsion). (AR at 47-48.) In any event, even if the hyponatremia was due to alcohol use, Plaintiff suffered from side-effects of medication such as nausea, vomiting, weakness, severe fatigue, loss of stamina (with history of falls), and loss of concentration. These side-effects would likely impair Plaintiff's ability to attend work regularly, and there was no evidence that they were related to alcohol use.

**The ALJ's extended discussion of Plaintiff's alcohol use was at odds with the ALJ's acknowledgement that such use was immaterial to his decision.**

The ALJ's decision contains further references to Plaintiff's alcohol use. For example, the ALJ noted that Plaintiff "testified that prior to 2016 a friend of the family was supplying [her] with alcohol [if not other substances] or provided [her] transportation to the liquor store" and that she was "likely … under the influence" when psychologist Annette Freel examined her. (AR at 44-45.)

As concluded above, the ALJ's finding that Plaintiff was not disabled during the closed period between June 1, 2013 and February 24, 2016, was based on medical inferences related to Plaintiff's alcohol use, which the ALJ was unqualified to make. Even if the ALJ **were** qualified to make such

11

inferences, they are at odds with the ALJ's own finding that Plaintiff's "substance use disorders are not a contributing factor material to the determination of disability."  (AR at 47.)  *See* 20 C.F.R. § 404.1535(b)(1) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.").

The ALJ found that Plaintiff was not disabled during the closed period with or without any alcohol use, and that finding appears to have been dictated by the unanimous medical opinions of Drs. Berman and Campbell that Plaintiff would likely have continued to experience disabling side-effects of medication during the closed period with or without alcohol use.  (AR at 71, 3272.)  The ALJ's extended discussion of Plaintiff's alcohol use was at odds with the ALJ's acknowledgement that such use was immaterial to his decision.

In summary, the ALJ's finding of a re-onset of disability date of February 24, 2016 (but not earlier) did not comport with applicable legal standards.  The ALJ's selection of February 24, 2016 was unsupported by any (and, in fact, contradicted every) medical opinion, which indicated that there was no period of non-disability following Plaintiff's liver transplant in June 2010.  The ALJ based his selection on his own independent (lay) assessment of the medical evidence, which he was unqualified to give.  That assessment was also at odds with the ALJ's finding that Plaintiff's alcohol use was immaterial to his decision.

**A judicial award of benefits is warranted.**

The remaining question is the appropriate remedy.  When a court finds that an ALJ's decision is not supported by substantial evidence, it may award benefits (as opposed to remanding for a new decision and further administrative proceedings) if the "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Sec'y of Health & Human Servs.*, 771 F.2d 966, 973 (6th Cir. 1985).  A judicial award of benefits is proper "only if all essential factual issues have been

resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y*, 17

F.3d 171, 176 (6th Cir. 1994).

Since 2000, the Sixth Circuit has applied the foregoing standard and awarded benefits on four

occasions. *Minor v. Comm'r*, 513 F. App'x 417 (6th Cir. 2013); *Kalmbach v. Comm'r*, 409 F. App'x 852 (6th

Cir. 2011); *Kennedy v. Comm'r*, 247 F. App'x 761 (6th Cir. 2007); *Martin v. Comm'r*, 61 F. App'x 191 (6th

Cir. 2003). For the reasons below, an award of benefits is at least as well supported in this case.

In *Kalmbach* and *Martin*, the Court cited the following in support of an award of benefits: "The

medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and

if the opinions are uncontradicted, complete deference." *Kalmbach* at 865; *Martin* at 200 (quoting *Harris*

*v. Sec'y*, 756 F.2d 431, 435 (6th Cir. 1985)). In *Minor*, although it was not uncontradicted, the treating

physician's opinion was found to be "entitled to great deference, its non-controlling status

notwithstanding." *Minor* at 437. In this case, the treating physician's (Dr. Campbell's) disabling opinion

was uncontradicted and, therefore, entitled to complete deference. Alternatively, Dr. Campbell's opinion

was entitled to controlling weight because it was "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the

administrative record. 20 C.F.R. § 404.1527(c)(2).

*Kennedy*, like the present case, was a termination of benefits case. In *Kennedy*, unlike the present

case, there was no treating physician's opinion supporting termination. Nevertheless, the Court awarded

Kennedy benefits because "the ultimate burden is on the Commissioner in termination proceedings and

we have found that substantial evidence does not support the termination." *Kennedy* at 768. In this case,

even if Dr. Campbell's opinion was not entitled to complete deference or controlling weight, substantial

evidence did not support the ALJ's termination decision.

In *Kalmbach*, the Court held that a judicial award of benefits was supported, in part, because: "In

view of the plaintiff's treating physicians' opinions and the plaintiff's own assertions of disabling pain,

stiffness, fatigue, and inability to concentrate, there exists strong evidence that the plaintiff's combined impairments meet or exceed a listed impairment under the Social Security regulations." *Kalmbach* at 865. In this case, Plaintiff testified to disabling side-effects of medication, and Dr. Berman testified that Plaintiff's colon/anal cancer equaled Listing 13.18(B) ("squamous cell carcinoma of the anus, recurrent after surgery") and that her chronic liver disease equaled one of the Listings at 5.05(A-G).  (AR at 69-70.)

**Order**

Therefore, it is hereby ORDERED that this matter is REMANDED to the Commissioner for calculation and payment of past-due Title II benefits for the closed period between June 1, 2013 and February 24, 2016.

August 14, 2019

**Lanny King, Magistrate Judge**
**United States District Court**